**Dana MECUM, Plaintiff,**

v.

**WEILERT CUSTOM HOMES, LLC, Liederbach & Graham, Architects, Phillip J Liederbach, and R. Michael Graham, Defendants.**

Case No. 15–cv–8548

United States District Court, N.D. Illinois, Eastern Division.

Signed 03/06/2017

place the blame on Barnhart for his own failure to exhaust is unavailing.

· Todd A. Rowden, James Leo Oakley, Holly Hannah Campbell, Thompson Coburn LLP, Chicago, IL, for Plaintiff.

Adam T Waskowski, Waskowski Johnson Yohalem LLP, Frederick J. Sperling, Mark C Friedlander, Shawna Boothe McCann, Schiff Hardin LLP, Chicago, IL, Defendants.

## ORDER

SHARON JOHNSON COLEMAN,
United States District Court Judge

The evidence before this Court establishes a genuine dispute of material facts as to whether an arbitration agreement exists in this case. Resolution of the defendants' motion to compel arbitration [106] will therefore require a trial pursuant 9 U.S.C. § 4. A status hearing is set for 3/27/2017 at 9:00 AM. The defendants' motion to compel arbitration is entered and continued until that date. The parties are to be prepared to set a trial date at that hearing. The parties are directed to discuss whether they would consent to a bench trial or to the exercise of jurisdiction by a magistrate judge with respect to the question of arbitrability.

## STATEMENT

 In order to compel arbitration, a movant must show (1) the existence of a valid written arbitration agreement; (2) that the dispute in question falls within the scope of that agreement; and (3) that the plaintiff refused to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d

577, 581 (7th Cir. 2006). Once the party seeking arbitration has shown those elements, the burden shifts to the party opposing arbitration to demonstrate that the arbitration agreement is unenforceable or that the claims are unsuitable for arbitration. *Wal–Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F.Supp.3d 713, 717–718 (N.D. Ill. 2014). A party opposing arbitration must meet the evidentiary standard required of a party opposing summary judgment under Fed. R. Civ. P. R. 56(e). *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Just as in summary judgment, the non-moving party must identify specific evidence in the record establishing a genuine dispute of material fact that must be resolved in a trial. *Id.* In determining whether a genuine issue of material fact exists, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In conducting this assessment, this Court cannot make credibility determinations, choose between competing inferences, or balance the relative weight of conflicting evidence. *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

 Whether a binding arbitration agreement exists is determined under the principles of state contract law. *Tinder*, 305 F.3d at 735. Because all of the relevant events occurred in Wisconsin, Wisconsin law determines the validity of the alleged agreement. *Id.* at 733 (7th Cir. 2002). Under Wisconsin law, the elements of an enforceable contract are offer, acceptance, and consideration. *Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879, 885, 362 Wis.2d 100 (Wis. 2015). "The existence of an offer and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract." *NBZ, Inc. v. Pilarski*, 520 N.W.2d 93, 96, 185 Wis.2d 827 (Wis. App. 1994).

 Here, a genuine dispute of material fact exists regarding whether an offer was made. The Liederbach & Graham ("L&G") defendants' argument that a contract exists depends upon Graham's testimony that he presented Mecum with the AIA Agreement at a March 7, 2013 meeting or his testimony that, subsequently, he also mailed Mecum a copy of that contract, and his assertion that Mecum subsequently accepted that contract by performance. But Mecum testified that Graham did not present any such contract on March 7, 2013, and Mecum's wife,[1] who Graham testified was present at that meeting, testified that Graham never presented her with the AIA Agreement. Moreover, both Mecum and his wife testified that they never received a letter from Graham containing the AIA Agreement. Mecum instead asserts that he had a preexisting oral agreement with Graham, and that the parties' actions occurred only pursuant to that verbal agreement.[2] Both parties also present a plethora of circumstantial evidence arising

---

1. In their reply, L&G asks this Court to bar Mrs. Mecum's declaration testimony. The Court views this argument as improperly brought and therefore disregards it. Nevertheless, the Court notes that to the extent that Mrs. Mecum's declaration conflicts with her prior deposition, the deposition testimony governs. *See United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466 (7th Cir. 2005).

2. A clear dispute of material facts exists surrounding the existence of this alleged oral contract. Although not relevant to the question of whether an offer was made and received, the existence of that oral contract is material to the circumstances under which acceptance could have occurred.

from their prior and subsequent relationship to support their respective positions regarding whether Mecum was provided with the AIA Agreement and whether that agreement governed the parties' subsequent relationship.

L&G contends that it is appropriate to compel arbitration notwithstanding this conflicting evidence based on this Court's ruling in *Pohlman v. NCR Corp.*, No. 12 cv 6731, 2013 WL 3776965, at *2–3 (N.D. Ill. July 17, 2013) (Coleman, J.), which relied on the principle that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932). That presumption, however, is inapplicable here. Graham testified that he could not say whether or not the envelope he had sent the March 14, 2013 letter in was correctly addressed, and he admitted that the letter itself had not been properly addressed. L&G thus cannot establish that the March 14 letter was "properly directed," and therefore is not entitled to a presumption of receipt.

The conflicting evidence in this case establishes a clear dispute of material fact as to whether Mecum ever received the AIA Agreement, which constituted L&G's offer of a contract. Although L&G argues that the "totality of the evidence" supports their position, the question at this juncture is not who has more evidence to support their position, but merely whether Mecum has some evidence to support his. He does. Because this Court must believe all of the evidence that Mecum presents and draw all reasonable inferences in his favor, this Court must conclude that a dispute of material fact exists regarding whether Mecum ever received, and therefore was capable of accepting, the AIA Agreement.

This Court turns its attention briefly to Mecum's arguments concerning acceptance of the AIA Agreement. Mecum contends that the Rider to the AIA Agreement containing the acceptance-by-conduct provision is an invalid amendment to the AIA Agreement. The AIA Agreement provides in part that it may be amended only by written instrument signed by both the Owner and the Architect. Thus, Mecum contends that the Rider constitutes an invalid amendment to the contract because it was not signed by either party. This argument is unavailing. A contract cannot be amended before it has been accepted, because prior to acceptance no contract exists to amend. The AIA Agreement had not been accepted when the Rider was attached to it, and the Rider therefore was a deviation from the stock provisions of the AIA Agreement that constituted part of the offer. This interpretation is supported by the AIA Agreement itself, which expressly incorporated "special terms and conditions that modify this Agreement" as found in the "attached exhibit" (i.e. the rider).

Mecum also contends that L&G cannot establish that its actions constituted acceptance of the AIA agreement as opposed to performance under the prior oral agreement. As an initial matter, this Court notes that the parties' testimony creates a dispute of material fact as to whether such an oral agreement existed. Assuming without deciding that such an agreement did exist, the parties would still need to establish whether Mecum engaged in conduct sufficient to accept the AIA Agreement. Mecum relies on the Illinois' standard, which provides that a course of conduct can act as consent to a contract only where it is clear that it relates to the specific contract in question and not any preexisting oral agreements. *Landmark Props., Inc. v. Architects Int'l–Chicago*, 526 N.E.2d 603, 606, 172 Ill.App.3d 379 (1988). L&G, in turn, asserts that under Wiscon-

sin law an oral contract is presumed merged into a subsequent written *contract* on the same issues; a proposition entirely irrelevant when, as here, the question is whether the written contract has been formed. This Court is not aware of any relevant Wisconsin law, although it finds Illinois' requirement that acceptance by performance be demonstrated by an act that would not otherwise have occurred to be persuasive. This Court, however, perceives that substantial disputes of material fact remain regarding whether Mecum engaged in conduct that specifically related to the AIA Agreement and not the allegedly preexisting oral agreement.

Accordingly, a trial must be held pursuant to 9 U.S.C. § 4 in order to ascertain whether the AIA Agreement was offered to and accepted by Mecum. A status hearing is set for 3/27/2017 at 9:00 AM. The parties are to be prepared to set a trial date at that hearing. The parties are directed to discuss whether they would consent to a bench trial or to the exercise of jurisdiction by a magistrate judge with respect to the question of arbitrability.

SO ORDERED.