**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 20-1759**

———————

CONSTELLIUM ROLLED PRODUCTS RAVENSWOOD, LLC,

Plaintiff – Appellant,

v.

UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION AFL-CIO/CLC; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION AFL-CIO/CLC, LOCAL 5668,

Defendants – Appellees.

———————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Thomas E. Johnston, Chief District Judge. (2:18-cv-01404)

———————

Argued: September 22, 2021　　　　　　　　　　Decided: November 29, 2021

———————

Before GREGORY, Chief Judge, and HARRIS and RUSHING, Circuit Judges.

———————

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

———————

**ARGUED:** Ancil Glenn Ramey, STEPTOE & JOHNSON PLLC, Huntington, West Virginia, for Appellant. Maneesh Sharma, AFL-CIO, Washington, D.C., for Appellees.
**ON BRIEF:** Christopher L. Slaughter, Huntington, West Virginia, Rodney L. Bean, STEPTOE & JOHNSON PLLC, Morgantown, West Virginia, for Appellant. Thomas P. Maroney, MARONEY, WILLIAMS, WEAVER & PANCAKE PLLC, Charleston, West

Virginia, for Appellees.

_____

RUSHING, Circuit Judge:

The crux of this case is our standard for reviewing arbitration awards. The district court held that the preclusive effect of a prior judgment of this Court was a question for the arbitrator in this case to decide, that the "manifest disregard" standard applied to the court's review of the arbitrator's determination, and that the arbitrator did not manifestly disregard the law or exceed his authority in issuing the underlying award. We agree and therefore affirm the district court's judgment denying the motion to vacate the arbitrator's award.

I.

Plaintiff Constellium Rolled Products Ravenswood, LLC operates an aluminum plant in Ravenswood, West Virginia. Defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, ALF-CIO/CLC and its Local 5668 (collectively, the Union) represent certain hourly maintenance and production employees at Constellium's Ravenswood plant. In 2013, after Constellium attempted to change some of its retirees' health benefits, the Union sued Constellium and its pension plan, arguing that the retirement health benefits in the parties' collective bargaining agreement (CBA) vested, such that Constellium could not unilaterally alter those benefits for existing retirees. This Court rejected the Union's argument and ruled that, because the CBA and its incorporated documents stated that retiree health benefits would endure only for the term of the CBA, they did not vest. *Barton v. Constellium Rolled Prods.-Ravenswood, LLC*, 856 F.3d 348, 351–353 (4th Cir. 2017).

Following that decision, Constellium and the Union negotiated another CBA, which took effect on September 19, 2017, and is effective through September 19, 2022. Like the

3

previous CBAs, this one appends a "Cap Letter," which outlines retiree healthcare benefits for employees who retired on or after January 1, 2003. The parties also documented benefits in a "Retired Employees' Group Insurance Program Booklet," which in turn refers to a summary plan description that provides medical and drug coverage to retirees for the duration of the CBA.

After the new CBA went into effect, Constellium sent a letter to its Medicare-eligible retirees, announcing major changes to their healthcare coverage. The Union initiated a grievance, asserting that the change violated the CBA's guarantee of retiree health benefits for the duration of the CBA's term. Constellium denied the grievance, claiming that the change did not violate the CBA and that, to the extent the change impacted retirees who retired under previous CBAs, it was permitted by this Court's decision in *Barton*.

Pursuant to the CBA, the parties were bound to arbitrate the grievance. Nevertheless, they both first sought relief in the district court. Constellium sued for a declaratory judgment that it prevailed on preclusion grounds, which the district court denied. The court reasoned that whether *Barton*'s ruling about retiree benefits precluded the arbitration was a question for the arbitrator. *See Constellium Rolled Prods. Ravenswood, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, No. 2:18-CV-01404, 2018 WL 6329748, at *5 n.3 (S.D. W. Va. Dec. 4, 2018). The Union filed an action for a preliminary injunction to halt the changes from taking effect until the arbitration concluded, which the district court granted.

4

The matter then proceeded to arbitration, and the arbitrator rendered an award in favor of the Union. The arbitrator concluded that "the question of whether retiree health benefits were vested or durational"—which was "central" in *Barton*—was "something of a red herring" in the arbitration because the Union's new claims did not "depend on the nature of the benefits in question, whether vested or durational," but "focus[ed] directly upon the [terms of] the parties' 2017 [CBA]." J.A. 179–180. Interpreting that agreement, the arbitrator found that Constellium was obligated to maintain the same health benefits for the relevant retirees throughout the full term of the 2017 CBA and that Constellium's unilateral change to those benefits violated the agreement.

Constellium moved in the district court to vacate the award. The district court denied the motion, finding that the arbitrator did not manifestly disregard the law or exceed his authority. *See Constellium Rolled Prods. Ravenswood, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, No. 2:18-CV-01404, 2020 WL 3104912 (S.D. W. Va. June 11, 2020). Constellium appealed.

## II.

On appeal from a denial of vacatur, we review the district court's legal rulings de novo and factual findings for clear error. *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012). "[C]ourts play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Because the parties have contracted to have their disputes settled by an arbitrator rather than a judge, courts "are not authorized to reconsider the merits of an award even

5

though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id.* "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Id.* (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

Constellium has raised numerous claims on appeal, which frame four main ideas. First, Constellium contends that the district court should have determined the preclusive effect of *Barton* on the Union's claim. Second, and relatedly, Constellium urges the Court to apply a different standard for reviewing res judicata and collateral estoppel errors than applies to other legal errors in arbitration. Third, applying the existing standard, Constellium argues that the arbitrator manifestly disregarded the law of res judicata and collateral estoppel. And fourth, Constellium asserts that the arbitrator exceeded his authority by interpreting the CBA as he did. We address each argument in turn.

A.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). By the same token, when a party has agreed to submit a dispute to arbitration, he "'should not be deprived of the arbitrator's judgment,'" since it was the judgment of an arbitrator, not a court, for which he bargained. *Misco*, 484 U.S. at 37 (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)). Constellium contends that, despite its agreement to arbitrate unsettled grievances, the district court should have decided *Barton*'s preclusive effect on

6

this dispute. We disagree. Absent an agreement to the contrary, the preclusive effect of a prior court judgment is for the arbitrator to decide.

"[T]he Supreme Court has identified two categories of threshold questions—procedural questions for the arbitrator, and questions of arbitrability for the court." *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002)). Questions of arbitrability are quite limited and include disputes about the existence and scope of a valid and binding arbitration agreement. *See Howsam*, 537 U.S. at 83–84. In contrast, "'procedural questions which grow out of the dispute and bear on its final disposition'" are left for the arbitrator. *Id.* at 84 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). These may include "the application of statutes of limitations, notice requirements, laches, and estoppel." *Del Webb*, 817 F.3d at 873; *see also Howsam*, 537 U.S. at 84–85. These questions "do not present any legal challenge to the arbitrator's underlying power," *Del Webb*, 817 F.3d at 874, and the parties "would likely expect" that the arbitrator—whom they have chosen to decide the merits of the dispute—would decide them, *Howsam*, 537 U.S. at 84.

The preclusive effect of a prior judgment is a procedural question for the arbitrator. Like estoppel and laches, preclusion is an affirmative defense to the claims in the underlying dispute. It does not implicate the arbitrator's power. Rather, it is "an 'aspect of the controversy which called the grievance procedures into play.'" *Id.* at 85 (brackets omitted) (quoting *John Wiley & Sons*, 376 U.S. at 559). Constellium highlights older decisions from other circuits holding that "courts have the power to defend their judgments

7

as *res judicata*, including the power to enjoin or stay subsequent arbitrations." *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994); *see also*, *e.g.*, *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1069 (11th Cir. 1993); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 498–501 (5th Cir. 1986). But after *Howsam*, it is clear that unless an arbitration agreement stipulates otherwise, a court is empowered only to decide limited questions of arbitrability and "*res judicata* [is] for the arbitrator to decide in the first instance." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004) (rejecting the court's prior *Kelly* decision on this ground); *see also*, *e.g.*, *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 581 (7th Cir. 2006) (applying *Howsam* to conclude that preclusion question was for the arbitrator). Courts "have no business . . . considering whether there is equity in a particular claim" before sending a grievance to arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted); *cf. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (rejecting a judge-made "wholly groundless" exception to contracts delegating the threshold arbitrability question to an arbitrator).

## B.

In a similar vein, Constellium argues that a court should exercise "plenary review" of an arbitrator's preclusion decision rather than adhering to the deferential standards that typically apply to judicial review of arbitration awards. We see no legal basis for Constellium's proposed standard.

The Federal Arbitration Act (FAA) identifies four grounds for vacating an arbitrator's award: (1) "the award was procured by corruption, fraud, or undue means";

8

(2) "evident partiality or corruption" in the arbitrator; (3) certain "misconduct" or "misbehavior" by the arbitrator in the conduct of the arbitration; or (4) the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). The FAA also permits a court to "modify[] or correct[]" an arbitration award where "there was an evident material miscalculation of figures" or "evident material mistake in [a] description," where the arbitrator "awarded upon a matter not submitted" to him, or where the award "is imperfect in matter of form not affecting the merits of the controversy." *Id.* § 11. Legal error is not a ground for vacating an arbitration award. *Misco*, 484 U.S. at 38; *see Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 585–586 (2008).

This Court has also endorsed "manifest disregard of the law" as a ground for vacating an arbitration award. *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). Although we have questioned that precedent in light of more recent decisions from the Supreme Court, "manifest disregard continues to exist either 'as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10.'" *Wachovia Sec.*, 671 F.3d at 483 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010)). Either way, manifest disregard requires that "'(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator refused to heed that legal principle.'" *Id.* at 483 (brackets omitted) (quoting *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349–350 (4th Cir. 2008)). In other words, manifest disregard requires that the arbitrator was "'aware of the law, understood it correctly, found it applicable to the case before him, and yet chose

9

to ignore it in propounding his decision.'" *Long John Silver's*, 514 F.3d at 349 (brackets omitted) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994)). Manifest disregard "is not an invitation to review the merits of the underlying arbitration." *Wachovia Sec.*, 671 F.3d at 483; *see Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015).

Constellium urges us to apply a standard less deferential than manifest disregard or that set by the FAA to review arbitral decisions about the preclusive effect of prior judgments. Under Constellium's "plenary review" standard, a court would determine the correct application of preclusion principles to the case at hand and then weigh the arbitrator's decision accordingly. Doing so, however, would subject an arbitrator's award to more searching judicial scrutiny than authorized by the FAA or our precedent, without any legal authority. *See U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) ("[J]udicial review of arbitration awards is . . . among the narrowest known to the law." (internal quotation marks omitted)). Contrary to Constellium's assertion, "[c]ourts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco*, 484 U.S. at 38; *see Hall St. Assocs.*, 552 U.S. at 586 (rejecting a standard of review that would permit vacatur of an arbitral award on the ground of legal error). Rather, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38. Out of regard for the FAA, we must decline to expand our review of legal errors in arbitral awards beyond review for manifest disregard of the law.

## C.

Applying the correct standard, we conclude that the arbitrator did not manifestly disregard the law of res judicata or collateral estoppel. Even if Constellium were right about the meaning of *Barton* and the proper application of preclusion principles to this case, at worst it has shown "a misinterpretation of law, faulty legal reasoning[,] or erroneous legal conclusion," all of which fall short of manifest disregard. *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991) (internal quotation marks omitted).

The arbitrator demonstrably weighed the parties' arguments, applied the law to the facts, and found that res judicata and collateral estoppel did not bar the Union's claim. Relevant to collateral estoppel, the arbitrator found "that the claims raised in this arbitral proceeding are not the same as those presented for resolution in *Barton*, and the federal law claims submitted and resolved in that litigation have not been repeated here." J.A. 181. The arbitrator analyzed the *Barton* decision, compared the issues resolved in that proceeding with the issues presented in the arbitration, and concluded that, unlike the core issue in *Barton*, the claims in arbitration did not depend on whether the benefits were vested or durational. As for res judicata, the arbitrator further explained that Constellium could not "establish that the federal courts would have exercised supplemental jurisdiction over any contract-interpretation claims that the Union might have made in the *Barton* case." J.A. 181. He reasoned that the contract claims may not have been possible to litigate in *Barton* and therefore "the fact that the Union could have but did not raise any contract-

11

interpretation claims in its *Barton* complaint does not bar the Union from raising such claims here." J.A. 182.

We cannot conclude that the arbitrator "knowingly ignored applicable law when rendering his decision." *Long John Silver's*, 514 F.3d at 351–352. A confusing, ambiguous, or even incorrect application of the law is not manifest disregard. Constellium argues that the arbitrator refused to apply the law when he stated that the Union's claims were not precluded by "the fact that the Union could have but did not" raise its claims in *Barton*. J.A. 182. But the arbitrator clearly stated that he declined to apply res judicata because he believed Constellium first had to show that the *Barton* court would have exercised supplemental jurisdiction over the Union's claims. Right or wrong, that is not manifest disregard of the law.

Most of Constellium's remaining arguments are variations on this theme. It argues that the arbitrator misunderstood the facts of the *Barton* case, which is another way of saying that he misapplied that prior ruling. It contends that the arbitrator's award did not draw its essence from the CBA because the arbitrator overlooked that the parties necessarily adopted *Barton*'s ruling into the new CBA, which is another way of saying that he misread and misapplied the prior judgment. Finally, it argues that the arbitrator's award violates the public policy of res judicata and collateral estoppel, which merely restates the same objections already addressed. All these arguments fail for the same reason: the arbitrator did not manifestly disregard the law of res judicata or collateral estoppel, and we are not authorized to review his decision on the merits. *See Wachovia Sec.*, 671 F.3d at 483.

12

D.

Lastly, Constellium argues that the arbitrator exceeded his authority by returning an award contrary to the contractual language when he held that the 2017 CBA secured benefits for past retirees. The district court rightly rejected this claim because the arbitrator "exercised the authority granted to him by the parties" to interpret the CBA and "his award drew its essence from the CBA." *Constellium*, 2020 WL 3104912, at *11. Put simply, the arbitrator possessed the authority to find that, while the Union had no obligation to represent past retirees, the parties had in fact bargained over those benefits. We conclude that the arbitrator here "'did his job,'" and, given the limited scope of review, we may go no further. *U.S. Postal Serv.*, 204 F.3d at 527 (quoting *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996)).

*AFFIRMED*

13