Alan CIRILLI, Brian Carlson,
Christina Johnson and John Shepperd,
Plaintiffs-Respondents,

v.

COUNTRY INSURANCE & FINANCIAL SERVICES,
Country Life Insurance Company,
Country Investors Life Assurance Company,
Country Mutual Insurance Company,
Country Casualty Insurance Company,
Country Preferred Insurance Company,
Mutual Service Life Insurance Company,
Mutual Service Casualty Insurance Company,
Modern Service Insurance Company and
MSI Preferred Insurance Company,
Defendants-Appellants.

Court of Appeals

*No. 2008AP3071. Submitted on briefs May 29, 2009.
—Decided October 28, 2009.*

2009 WI App 167

(Also reported in 776 N.W.2d 272.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Todd G. Smith* and *Hamilton E. Arendsen* of *Godfrey & Kahn, S.C.*, Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James W. Hammes* of *Cramer, Multhauf & Hammes, LLP*, Waukesha.

Before Brown, C.J., Neubauer, P.J. and Anderson, J.

¶ 1. NEUBAUER, P.J. Country Insurance & Financial Services appeals from a circuit court order denying its motion to compel arbitration of a complaint brought by its former agents. The former agents allege that Country breached their Agent's Agreement by refusing to pay them termination commissions. The Agent's Agreement contains a mandatory arbitration provision applicable to any claim or controversy relating to or arising out of the agency relationship with Country, the Agent's Agreement or termination of the Agent's Agreement. The agents contend that the arbitration provision is inapplicable because, in a separate settlement agreement and release, Country released any claims or

defenses it could assert as justification for refusing to pay the termination commissions due to them under their Agent's Agreements. The trial court agreed and found that the release, which does not contain an arbitration clause, governs this dispute and effectively supersedes the Agent's Agreement's mandatory arbitration clause. We disagree. Because the former agents' complaint seeks payment of commissions under the Agent's Agreement, this dispute falls squarely within that agreement's mandatory arbitration clause. Whether Country released any claim or defense to the agents' claims for commissions requires an analysis of the merits of the dispute, resolution of which is to be considered exclusively in arbitration. We reverse and remand with an order to compel arbitration.

## BACKGROUND

¶ 2. On July 18, 2007, Alan Cirilli, Brian Carlson, Christina Johnson, and John Shepperd (the "Cirilli Plaintiffs") filed a complaint in the Waukesha county circuit court, naming Country Insurance & Financial Services and the insurance companies it encompasses as defendants ("Country"). The Cirilli Plaintiffs, who are former Country agents, allege they are due certain termination commissions under their respective Agent's Agreements. They contend that Country has refused to pay these termination commissions because of alleged violations of a noncompete provision in the Agent's Agreement arising from their subsequent relationship with Couri Insurance Agency, Inc., and Couri Insurance Associates, LLC ("Couri"). The plaintiffs further allege that Country breached a Settlement Agreement and Release involving other former Country agents and Couri, whereby Country allegedly released all claims or defenses against the plaintiffs.

¶ 3. On September 28, 2007, Country filed a motion to compel arbitration (or in the alternative, to dismiss the complaint) pursuant to WIS. STAT. § 788.02 (2007–08).[1] Country requested the action be stayed and arbitration compelled in accordance with the terms of the Cirilli Plaintiffs' Agent's Agreements upon which their claims to commissions are based. Country maintains this dispute comes squarely within the plain and unambiguous language of the mandatory arbitration clause contained in each of the four Agent's Agreements signed by the plaintiffs and Country. The arbitration clause contained in the Agent's Agreement reads as follows:

> [A]ny claim or controversy relating to or arising out of the relationship between the Agent and the Companies, this Agreement (and/or any agreement superseded by this Agreement), or the termination of this Agreement, whether the parties' rights and remedies are governed or created by contract law, tort law, common law or otherwise, or by federal, state or local statute, legislation, rule or regulations, shall be resolved exclusively by binding arbitration in Bloomington, Illinois (unless otherwise provided by law), by one arbitrator selected by the Companies and the Agent, all in accordance with the commercial arbitration rules of the American Arbitration Association then in effect. Judgment upon any arbitration award lawfully rendered may be entered and enforced in any court having jurisdiction. Any claim governed by this arbitration clause must be brought within one year of the events giving rise to the claim or controversy by serving on the other party within such time a written request for arbitration stating the grounds for the claim and the relief requested. (Emphasis added.)

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 4. The Cirilli Plaintiffs opposed the motion to compel arbitration based on conclusions reached in two prior lawsuits. The Cirilli Plaintiffs asserted that Country's refusal to pay the disputed termination commissions constituted a breach of their contract rights under the Settlement Agreement and Release executed by Country and Couri in settlement of lawsuits in Minnesota, and as adjudicated in a final judgment of the circuit court of Waukesha county, Wisconsin, in litigation brought by the Reis Plaintiffs, as discussed below. The relevant background of the Minnesota and Reis litigation is as follows:

### *The Minnesota Litigation*

¶ 5. Beginning on or about April 6, 2006, Country filed complaints against seven former Country agents, as well as Couri, in various counties in Minnesota. A mediation session was conducted for purposes of resolving Country's claim against Couri and the seven former Country agents. Following the mediation session, Country, Couri, and the seven former Country agents executed a Settlement Agreement and Release on December 1, 2006. Paragraph two of the Settlement Agreement and Release provides as follows:

> Couri shall, within 10 days after the execution of this Agreement, pay to Country the sum of $75,000.00, which sum shall be consideration for the execution of this Agreement. Couri, as of the date hereof by execution of this Agreement, releases and forever discharges all claims, causes of action, defenses, offsets, or counterclaims, whether known or unknown, which it has, or may have, against Country relative to any cause of action arising out of the kinds of allegations referenced in the lawsuits. **Country, as of the date hereof by execution of this Agreement, releases and for-**

**ever discharges all claims, causes of action, defenses, offsets, or counterclaims, whether known or unknown, which it has, or may have, against Couri, and all former Country agents who have terminated an agency relationship with Country and have entered into a business arrangement or agreement with Couri under the same, or substantially the same, business arrangement or agreement with Couri under the same, or substantially the same, business arrangement as between Couri and the individual Defendants which gave rise to this litigation.** (Emphasis added.)

### *The Reis Litigation*

¶ 6. On April 5, 2006, prior to the filing of the Minnesota litigation, five former Country agents ("the Reis Plaintiffs") filed suit against Country in the Waukesha county circuit court. The Reis Plaintiffs sought to recover termination commissions due under their respective agent's agreements with Country. Country filed a motion to compel arbitration, pursuant to the mandatory arbitration clause contained in the agent's agreement, which was granted by the court.

¶ 7. Following the signing of the Settlement Agreement and Release in the Minnesota litigation on December 1, 2006, the Reis Plaintiffs filed the Settlement Agreement and Release with the arbitrator. The arbitrator found that the language of the release was clear and unambiguous and that Country had released any claims, causes of action, defenses, offsets or counterclaims, whether known or unknown, which Country possessed and was asserting as justification for refusing to pay the termination commissions due to the Reis Plaintiffs under their agent's agreements. Judgment was entered in the Waukesha county circuit court in accordance with the arbitrator's findings.

### *The Cirilli Proceeding*

¶ 8. On November 5, 2007, a hearing was held with regard to Country's motion to compel the arbitration in this matter. After oral argument, the trial court denied Country's motion to compel arbitration. The trial court determined that (1) the Cirilli Plaintiffs were substantially the same as those individual defendants in the Minnesota litigation[2] and (2) the Settlement Agreement and Release executed by Country in the Minnesota litigation was a global release containing no arbitration clause, which effectively superseded the underlying Agent's Agreement and its mandatory arbitration provision.[3] Country appeals the order denying its motion to compel arbitration.[4]

---

[2] The trial court found that, at the time the Settlement Agreement and Release was executed in the Minnesota litigation, the Cirilli Plaintiffs were former Country agents who had terminated their agency relationship with Country and entered into a business arrangement or agreement with Couri under the same or substantially the same business arrangement as between Couri and the individual former Country agents/defendants which gave rise to the Minnesota litigation.

[3] At the hearing on Country's motion to compel arbitration, the trial court framed the issue as whether there is a global settlement that "trumps" the underlying agreement—the Agent's Agreement. While the court had previously stated it would deny the motion to compel arbitration (having already determined that there was a global settlement that trumped the underlying Agent's Agreement), the court acknowledged that if the global agreement did not "trump" the underlying Agent's Agreement the dispute would be back to arbitration.

[4] Country also appealed the circuit court's grant of summary judgment in favor of the plaintiffs, contending that there are material disputes of fact regarding the scope of the release executed in the Minnesota litigation. However, because we find

246

## DISCUSSION

¶ 9. Country challenges the circuit court order denying its motion to compel arbitration under the Wisconsin Arbitration Act. Country asserts that the trial court erred in ruling that Country's right to enforce the mandatory arbitration clause in the Agent's Agreement was superseded by the execution of the Settlement Agreement and Release, which does not contain an arbitration clause. Country contends that the circuit court erred by considering the merits of the case. Country seeks reversal of the circuit court's order denying Country's motion to compel arbitration and remand for entry of an order to compel arbitration.

### *Applicable Law*

¶ 10. At the outset, we note that the Cirilli Plaintiffs do not challenge the validity of the Agent's Agreement or its arbitration clause. Thus, at issue in this appeal is solely whether the plaintiffs' claims fall within the mandatory arbitration provision of the Agent's Agreement, which applies to any claim or controversy relating to or arising out of the agency relationship, the agreement or termination of the agreement. Country's motion to compel arbitration involves issues of contract interpretation and a determination of substantive arbitrability, questions of law we review de novo. *See Joint School Dist. No. 10, City of Jefferson v. Jefferson Ed.*

that this dispute is arbitrable, and therefore reverse and remand with an order to compel arbitration, we need not reach the issue of summary judgment. *See Barber v. Weber*, 2006 WI App 88, ¶ 19, 292 Wis. 2d 426, 715 N.W.2d 683 (when the resolution of one issue resolves the appeal we need not address additional issues that are presented).

247

*Ass'n*, 78 Wis. 2d 94, 101–102, 253 N.W.2d 536 (1977); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003).

■

¶ 11. The Wisconsin Arbitration Act provides in relevant part:

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Wis. Stat. § 788.02. The Wisconsin Arbitration Act embodies this state's clearly established public policy to enforce agreements to arbitrate. *See Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 28 & n.13, 290 Wis. 2d 514, 714 N.W.2d 155.

■■

¶ 12. As guidance in determining the court's function in arbitration disputes, Wisconsin has adopted the general teachings set forth in the *Steelworkers Trilogy*.[5] *Kimberly Area Sch. Dist. v. Zdanovec*, 222 Wis. 2d 27,

---

[5] The *Steelworkers Trilogy* consists of *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

While the *Steelworkers Trilogy* involved collective bargaining disputes, the general principles have been applied by Wisconsin courts in cases addressing Wis. Stat. § 788.02. *See Kimberly Area Sch. Dist. v. Zdanovec*, 222 Wis. 2d 27, 39, 586

38–40, 586 N.W.2d 41 (Ct. App. 1998); *see also Denhart v. Waukesha Brewing Co., Inc.*, 17 Wis. 2d 44, 51–52, 115 N.W.2d 490 (1962). First, arbitration is a matter of contract and, as such, no party can be required to submit to arbitration any dispute which he or she has not agreed to submit. *See Kimberly Area Sch. Dist.*, 222 Wis. 2d at 39 (citing *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986)). Second, the question of arbitrability is an issue for judicial determination. *See Kimberly*, 222 Wis. 2d at 39 (citing *AT&T Tech.*, 475 U.S. at 649).

¶ 13. In deciding whether the parties have agreed to submit a dispute to arbitration, the court is not to rule on the potential merits of the underlying claim. *See Kimberly*, 222 Wis. 2d at 39 (citing *AT&T Tech.*, 475 U.S. at 649–50). It necessarily follows that, even if it appears to the court to be frivolous, the claim at issue is to be decided not by the court asked to order arbitration but, as the parties have agreed, by the arbitrator. The courts have no business weighing the merits of the grievance—the "agreement is to submit all grievances to arbitration, not merely those which the court will

N.W.3d 41 (Ct. App. 1998), *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, 290 Wis. 2d 514, ¶ 28, 714 N.W.2d 155 (arbitration provisions are presumed valid); *see also, Joint School Dist. No. 10, City of Jefferson v. Jefferson Ed. Ass'n*, 78 Wis. 2d 94, 111, 113–14, 253 N.W.2d 536 (1977) (applying teachings of the *Steelworkers Trilogy* in arbitration dispute arguably governed by WIS. STAT. ch. 298 (1977), the predecessor to § 788.02); *Franke v. Franke*, 2004 WI 8, ¶ 103, 268 Wis. 2d 360, 674 N.W.2d 832 (Prosser, J., dissenting) (recognizing settled rules governing arbitration and citing *Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n*, 118 Wis. 2d 707, 712, 348 N.W.2d 175 (1984), in which the court noted the acceptance of the *Steelworkers Trilogy*).

deem meritorious." *AT&T Tech.*, 475 U.S. at 650 (citation omitted); *Joint School Dist. No. 10.*, 78 Wis. 2d at 111 (when determining arbitrability, the court has no business weighing the merits of grievance).

¶ 14. There is a strong presumption of arbitrability where the contract in question contains an arbitration clause. *See Kimberly*, 222 Wis. 2d at 39 (citing *AT&T Tech.*, 475 U.S. at 650). Therefore, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech.*, 475 U.S. at 650 (citation omitted). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* Thus, when a court is called upon to ascertain the arbitrability of a dispute, the court's function is limited to a determination of whether: (1) there is a construction of the arbitration clause that would cover the grievance on its face and (2) whether any other provision of the contract specifically excludes it. *See Joint School Dist. No. 10*, 78 Wis. 2d at 111; *see also Kimberly*, 222 Wis. 2d at 38.

*The Plaintiffs' Claims for Termination Commissions*
*Fall Within the Broad Mandatory Arbitration Clause*
*Contained in the Agent's Agreement.*

¶ 15. Here, the mandatory arbitration provision contained in the Agent's Agreement provides that "any claim or controversy relating to or arising out of the relationship between the Agent and the Companies, this Agreement . . . or the termination of this Agreement . . . shall be resolved exclusively by binding arbitration." In the complaint, the plaintiffs seek termina-

tion commissions under the terms of the agency contract. They allege that Country has refused to pay the commissions based on alleged violations of the postemployment noncompetition clause in that agent contract. Their prayer for relief seeks a judgment ordering Country to pay them the commissions under the terms of the contract between each of them and Country. While they do not specifically identify the Agent's Agreement, the plaintiffs' allegations and prayer for relief seek recovery of the termination commissions under the terms of the contract between each plaintiff and Country.[6]

¶ 16. We conclude that the Cirilli Plaintiffs' complaint falls squarely within the plain language of the mandatory arbitration clause of the Agent's Agreement. The Cirilli Plaintiffs' claim for the disputed termination commissions relate to and arise out of the relationship between the Cirilli Plaintiffs and Country, the Agent's Agreement and the termination of the Agent's Agree-

---

[6] While the Cirilli Plaintiffs maintain their right to the disputed termination commissions also arises from the Settlement Agreement and Release attached to their complaint, we are unconvinced. The Settlement Agreement and Release was executed between Country Insurance and the plaintiffs in the Minnesota litigation, in which the Cirilli Plaintiffs were not parties. Notably, the Cirilli Plaintiffs point to no provision in that agreement that gives rise to a claim for commissions. Indeed, the only mention of termination commissions is a release by the individual defendants in that case of any claims to termination commissions under the terms of their agency agreements—which underscores that any rights to termination commissions arise from the Agent's Agreements. The Agent's Agreement contains a Commission Schedule which, in part, provides guidelines for the payment of postemployment termination commissions.

ment. Further, a review of the Agent's Agreement reveals no other contract provision that specifically excludes arbitration of a dispute over termination commissions. The dispute is therefore arbitrable.

¶ 17. The release in the Settlement Agreement and Release does not compel an opposite conclusion. Any determination that the Settlement Agreement and Release releases Country's claims or defenses is a determination on the merits. As noted above, it is well established that when determining arbitrability the court must not rule on the potential merits of the underlying claim. *See Kimberly*, 222 Wis. 2d at 39 (citing *AT&T Tech.*, 475 U.S. at 649–50). Thus, even a seemingly frivolous claim must be submitted to arbitration if the dispute falls within the scope of the parties' arbitration agreement. *See AT&T Tech.*, 475 U.S. at 649–50; *see also Int'l Bhd. of Elec. Workers v. Illinois Bell Tel. Co.*, 491 F.3d 685, 688 (7th Cir. 2007).

¶ 18. Similarly, the Cirilli Plaintiffs' attempt to avail themselves of issue preclusion, based on the prior Reis litigation judgment, is not properly before the court on Country's motion to compel arbitration. The Reis litigation judgment incorporates the arbitrator's finding that the release, by its express terms, released all claims, causes of action, defenses, offsets, or counterclaims which Country asserted as a basis for refusing to pay the former agents the termination commissions. The Cirilli Plaintiffs do not contend that the prior judgment bars their claim under the Agent's Agreement, nor would they. Rather, they argue that issue preclusion bars Country from raising counterclaims or defenses to their claims for commissions. Evaluating the collateral estoppel effect of the prior judgment does not challenge the validity of the arbitration clause or

call into question whether this dispute falls within the scope of the arbitration clause. Therefore, the effect of the prior judgment on this dispute is an issue to be decided by an arbitrator. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 415 F.Supp.2d 887, 890 (N.D. Ill. 2006), *aff'd*, 466 F.3d 577 (7th Cir. 2006) (preclusion issues are to be decided by an arbitrator); *see also, Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability.) Once the trial court determined the suit was brought on an issue referable to arbitration under the arbitration provision of the Agent's Agreement, it should have inquired no further into questions not properly before the court and granted Country's motion to compel arbitration.[7]

---

[7] We note that our conclusion is in accord with a recent federal court order granting a motion to compel arbitration of a separate suit brought against Country for post-termination commissions by a former Country agent. In *Nelson v. Country Ins. & Fin. Servs. et al.* (08–C-1041) (E.D. Wis. Feb. 20, 2009), the plaintiff, Nelson, also argued that his claim arose from the Settlement Agreement and Release executed by Country in the Minnesota litigation and that, by virtue of that agreement, Country waived any defenses it had to his claim. *Id.* at 6. Further, Nelson asserted that because his claim arose from the Settlement Agreement and Release the mandatory arbitration clause contained in the agent's agreement did not apply. *Id.* at 5–6. The United States District Court for the Eastern District of Wisconsin rejected this argument and found that Nelson's breach of contract claim arose from the agent's agreement, and that the mandatory arbitration clause clearly and unambiguously required Country and its agents to arbitrate breach of contract claims arising out of the agent's agreement itself. *Id.* at 9–10. The trial court additionally determined that, because "even a seemingly frivolous claim must be submitted to arbitra-

## CONCLUSION

¶ 19. In sum, the Cirilli Plaintiffs' claim for the payment of disputed termination commissions under the Agent's Agreement is arbitrable under the agreement's mandatory arbitration clause. We reverse and remand with an order to compel arbitration.

*By the Court.*—Order reversed and cause remanded with directions.

---

tion," the question of whether issue preclusion prevented Country from raising counterclaims or defenses to the plaintiff's claims was not properly addressed prior to arbitration. *Id.* at 7 (citing *Int'l Bhd. of Elec. Workers v. Ill. Bell Tel. Co.*, 491 F.3d 685, 688 (7th Cir. 2007)). The federal court concluded that the case was arbitrable and granted Country's motion to compel arbitration. *Id.* at 10.